# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS R. BOWERS,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        1:10CV458
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner                  )
of Social Security,[1]               )
                                     )
            Defendant.               )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Thomas R. Bowers, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act.  (Docket Entry 1.)  The Court has before it the certified administrative record (cited herein as "Tr.   "), as well as the parties' cross-motions for judgment (Docket Entries 10, 13).  For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and alleged a disability onset date of January 1, 2003.  (Tr. 50-52.)  Upon denial of that application

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

initially (Tr. 26, 45-49) and on reconsideration (Tr. 27, 40-42), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 39).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 994-1044.)  The ALJ then ruled Plaintiff not disabled within the meaning of the Act.  (Tr. 14-25.)   The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.  (Tr. 6-9.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2010.

2.   [Plaintiff] has not engaged in substantial gainful activity since January 1, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

. . .

3.   [Plaintiff] has the following severe impairments: degenerative disc disease, cervical spondylosis, spinal stenosis, and recurrent headaches (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) provided he is allowed to stretch and move as

needed while standing and is not required to stand or walk more than one hour at a time. Additionally, [Plaintiff] should not be required to climb, stoop, kneel, crouch, and crawl on more than an occasional basis.

(Tr. 19-21.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ concluded that Plaintiff could perform his past relevant work as a lawn maintenance worker as Plaintiff actually had performed such work. (Tr. 24.) Accordingly, the ALJ found Plaintiff to suffer from no "disability," as defined in the Act, at any time from the alleged onset date through the date of decision. (Id.) Alternatively, based on the VE's testimony, as well as consideration of Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff could "perform other vocationally relevant jobs existing in significant numbers in the national economy." (Id. (citing 20 C.F.R. § 404.1520(g)).)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits]

if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

4

was reached based upon a correct application of the relevant law."
Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points forecloses a benefits award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work
(continued...)

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## Assignments of Error

According to Plaintiff, substantial evidence fails to support the findings at steps two, four, and five and/or the ALJ misapplied

---

[4](...continued)
related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562 63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

the law at those steps.  (Docket Entry 11 at 4-20.)  Specifically, Plaintiff asserts the ALJ erred by:  (1) finding against Plaintiff at step four, because the work to which the ALJ found Plaintiff could return did not qualify as substantial gainful activity (id. at 4-7); (2) resolving step five based on the VE's responses to a hypothetical question that lacked limitations the ALJ included in the RFC (id. at 7-9); (3) limiting cross-examination of the VE in a manner that undermined the step five ruling (id. at 9-13); (4) failing to identify Chronic Fatigue Syndrome ("CFS") as a severe impairment at step two and to include related limitations in the RFC (thus affecting the step five decision) (id. at 13-17); and (5) ignoring and miscasting medical evidence in formulating the RFC (again, impacting the determination at step five) (id. at 17-20).  Defendant contends otherwise and urges that substantial evidence supports the finding of no disability.  (Docket Entry 14 at 4-19.)

## 1.  Past Relevant Work

Plaintiff first argues that because (in ruling for him at step one) the ALJ found that Plaintiff's work in lawn maintenance after the onset date did not constitute substantial gainful activity, such work also did not qualify as past relevant work ("PRW").  (Docket Entry 11 at 5-6 (citing 20 C.F.R. § 404.1560(b)).)  As such, Plaintiff maintains the ALJ erroneously deemed Plaintiff not disabled at step four, based on his ability to return to such work.  (Id. at 6-7.)  Defendant concedes the ALJ erred in characterizing

Plaintiff's lawn maintenance work as PRW,[6] but contends said error remains harmless given the ALJ's alternative ruling at step five. (Docket Entry 14 at 13-14.) For reasons discussed below, substantial evidence supports the ALJ's finding that a significant number of jobs exists that Plaintiff could perform. As a result, "[a]lthough the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five." Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008)); accord Bradberry v. Colvin, No. 5:12-CV-190-D, 2012 WL 4776530, at *9 (E.D.N.C. Sept. 6, 2013) (unpublished).

## 2. Hypothetical Question to VE

Next, Plaintiff contends the ALJ failed to incorporate into his hypothetical questions to the VE certain limitations he included in Plaintiff's RFC, thereby invalidating the step five determination. (Docket Entry 11 at 7-9 (citing Tr. 21, 1027-28, 1035-36).) More specifically, Plaintiff maintains the ALJ found that Plaintiff could only occasionally climb, stoop, kneel, crouch and crawl, but neglected to include those limitations in questions to the VE. (Id.) Citing Walker v. Bowen, 889 F.2d 47, 50 (4th

---

[6] The Commissioner's regulations define PRW as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b) (emphasis added). Generally, in evaluating whether work activity qualifies as substantial gainful activity, the amount of earnings represents the "primary consideration." 20 C.F.R. § 404.1574(a)(1). The ALJ found at step one that Plaintiff's income from lawn maintenance work after the onset date did not rise to the level of substantial gainful activity. (Tr. 19.) Defendant's concession on this point thus appears well taken.

Cir. 1989), Plaintiff then argues that a VE's testimony "must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." (Docket Entry 11 at 7.)

Although the ALJ did omit the above-listed postural limitations from his hypothetical questions to the VE (compare Tr. 21, with Tr. 1027-28, 1035-36), that fact does not warrant relief in this instance. During the hearing, in response to the ALJ's description of an RFC without the above-listed postural limitations, the VE identified three jobs available in significant numbers: assembler of small products, router, and mail sorter. (Tr. 1036.) The VE further testified that those three jobs corresponded with entries in the Dictionary of Occupational Titles ("DOT"). (Id.) According to the DOT, none of those three jobs requires any climbing, stooping, kneeling, crouching and crawling. See Dictionary of Occupational Titles §§ 222.587-038, 706.684-022, and 209.687-026 (4th ed. rev. 1991). The ALJ's omission of the postural limitations from the hypothetical questions to the VE thus provides no grounds for reversal or remand because it had no possible impact on the step five determination. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); Mills v. Astrue, No. 2:11-cv-65, 2012 WL 2030093, at *23 (N.D.W.

Va. Apr. 9, 2012) (unpublished) (ruling ALJ's failure to replicate RFC restrictions in hypothetical question harmless where oversight did not affect finding of non-disability), <u>recommendation adopted</u>, 2012 WL 2030066 (N.D.W. Va. Jun. 6, 2012) (unpublished).

## 3. Cross-examination of VE

Plaintiff further complains that the ALJ improperly limited cross-examination of the VE. (Docket Entry 11 at 9-13.) In particular, Plaintiff claims the ALJ "interrupted" his counsel's attempts to "question[] the [VE] about the method she used to derive the numbers for the three jobs she identified in response to the ALJ's final hypothetical question." (<u>Id.</u> at 10.) As support, Plaintiff points to this exchange between his counsel and the ALJ:

> ALJ:    Okay. Counsel, move ahead. What are you trying to show?
>
> ATTY:   Reliability, Your Honor. Reliability of the testimony.
>
> ALJ:    So, you're going to impeach this witness and then what?
>
> ATTY:   If the burden is on the government at step five to show that there are certain numbers of jobs that [Plaintiff] can perform and the [VE]'s testimony is unreliable as to the numbers of those jobs, Your Honor –
>
> ALJ:    What about the fact that he can do his prior work?
>
> ATTY:   Well, I don't know that that was – if you found that he could do medium work, certainly. We're talking about a hypothetical where [the VE has] identified those particular jobs, and if they came from a private company that

11

divvied up the jobs based upon some formula that we don't know about, then the question arises whether the [VE]'s testimony is reliable.

ALJ:      Go ahead.

     *  *  *  [Plaintiff's counsel resumes his cross-examination]

ALJ:      I've heard enough of this.  Let's wrap this up.

ATTY:     You're not going to let me ask any more questions?

ALJ:      I'm not going to let this go on. [INAUDIBLE] Now, she says she spoke to U.S. Publishing. Now, it's going to be who.  Then it's going to be when.   Then it's going to be what they said.   Then it's going to be let me see your notes.   Then it's going to be how often do you talk to them.   I mean I've cross-examined people too.   Now, if there's a warrant for cross-examination, it's one thing, but going on a wild goose chase is another.

ATTY:     This is – I don't see how this is a wild goose chase.

ALJ:      I'm not going to argue with you, Counsel.

ATTY:     So, you're not going to let me –

ALJ:      You're going to wrap it up.

ATTY:      – pursue this line of questioning?

ALJ:      I'm going to let you wrap it up.

ATTY:     I'll object on the record.

ALJ:      The record is noted.  Your objection is noted for the record.

(Docket Entry 11 at 10-12 (citing Tr. 1039-40, 1042-43).)

Plaintiff cites Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002), for the proposition that "[i]f the basis of the [VE]'s conclusions is questioned at the hearing . . . then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." (Docket Entry 11 at 10 (emphasis omitted).) In Plaintiff's view, by interrupting his counsel's cross-examination, the ALJ "failed in his duty to inquire." (Id. at 12-13 (citing Polly v. Astrue, No. 1:08-CV-158, 2009 WL 1766842 (N.D. Ind. Jun. 23, 2009) (unpublished)).) This argument fails for two reasons.

First, Plaintiff's reliance on Donahue is misplaced. The Seventh Circuit requires an ALJ to inquire into the reliability of a VE's methods "[i]f the basis of a [VE]'s conclusions is questioned at the hearing." Donahue, 279 F.3d at 446. However, the Fourth Circuit has not adopted this approach and at least four other circuits and two district courts within the Fourth Circuit have held that a VE's experience and expertise provide the necessary foundation for his or her testimony. See Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448-50 (2d Cir. 2012); Curcio v. Commissioner of Soc. Sec., 386 F. App'x 924, 926 (11th Cir. 2010); Horodenski v. Commissioner of Soc. Sec., 215 F. App'x 183, 189-90 (3d Cir. 2007); Bayliss v. Barnhart, 427 F.3d 1211, 1218 & n.4 (9th Cir. 2005); Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *8 (W.D.N.C. Aug. 24, 2010) (unpublished),

recommendation adopted, 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010) (unpublished); Torres v. Astrue, Civ. Action No. 0:07-2865-PMD-PJG, 2009 WL 873995, at *19 (D.S.C. Mar. 30, 2009) (unpublished).

Second, Plaintiff's brief omits his counsel's detailed cross-examination of the VE, quoting only the portions containing the ALJ's interruptions. (See Docket Entry 11 at 9-13.) In fact, the ALJ permitted Plaintiff's counsel to engage in a relatively lengthy and detailed exchange with the VE, including questions regarding which entities provided the job data and the process involved in translating that data into corresponding numbers for specific DOT job codes. (Tr. 1037-42.) The ALJ thus gave Plaintiff's counsel a fair amount of latitude to inquire as to the VE's methods for deriving the job numbers she cited.[7] Notably, Plaintiff has not identified a specific line of questioning his counsel would have followed if allowed further leeway or a pertinent fact his counsel might have uncovered. (See Docket Entry 11 at 9-13.) Nor has Plaintiff presented any argument as to how additional questioning plausibly would have rendered the VE's testimony unreliable. (Id.)

_____

[7] This fact undermines Plaintiff's description of Polly as "identical" to this case (Docket Entry 11 at 12). In Polly, a case from a district court within the Seventh Circuit, the claimant's counsel, during cross examination, undermined the credibility of the VE by eliciting an admission that the VE created his own non peer reviewed and untested methodology for deriving the number of available jobs. Polly, 2009 WL 1766842, at *6 7. The ALJ then interrupted the cross examination and Plaintiff's counsel objected. Id. The Polly court held that Plaintiff's cross examination sufficiently called into question the VE's reliability to trigger the ALJ's duty of inquiry under Donahue. Id. at *8. Here, even if Donahue governed in this Circuit, the ALJ permitted Plaintiff to cross examine the VE at some length, during which time Plaintiff elicited no facts calling into question the validity of the VE's methodology. (Tr. 1037 42.)

Under these circumstances, Plaintiff has shown no basis for relief related to limits on cross-examination of the VE.

## 4.   CFS

According to Plaintiff, the ALJ also erred by failing to identify CFS as a severe impairment and to include any limitations for CFS in the RFC.  (Docket Entry 11 at 13-17.)  In support of this argument, Plaintiff points to medical records showing consistent complaints of fatigue, positive testing for tender points, and signs of elevated Epstein-Barr virus antibodies.  (Id. at 14-16 (citing Tr. 166-70, 172, 179, 181, 193, 215, 217-18, 224, 228, 238, 258, 263, 265-89, 533, 550-52, 556-57, 595, 620, 774, 789, 792, 795, 798, 800, 804, 807, 810, 813, 817, 820, 823, 826, 829, 832, 835, 838, 841, 844, 847).)  Plaintiff additionally argues that Dr. Sean Maloney's assessments in 2004 (Tr. 491, 550-52, 556-57) (and, in particular, September 2004) that Plaintiff had "chronic fatigue, possibly associated with previous Epstein-Barr virus exposure" (Tr. 557)), along with Plaintiff's diagnosis of fibromyalgia (Tr. 166-70, 172, 263, 533),[8] demonstrate that he

---

[8] Plaintiff describes fibromyalgia and CFS as similar impairments.  (Docket Entry 11 at 14 (citing Social Security Administration, Evaluating Chronic Fatigue Syndrome (CFS) ("SSR 99 2p)).)  In fact, the cited Social Security Ruling does recognize that "[i]ndividuals with impairments that fulfill the American College of Rheumatology criteria for [fibromyalgia] (which includes a minimum number of tender points) may also fulfill the criteria for CFS."  SSR 99 2p, 1999 WL 2711569, at *3 n.3 (emphasis added).  However, the use of the word "may" in said text indicates that a diagnosis of fibromyalgia does not compel a finding that a claimant suffers from CFS, much less that it constitutes a severe impairment.

suffers from CFS at a level that constitutes a severe impairment. (See Docket Entry 11 at 14-16.)

Both parties appear to disagree with the ALJ's finding that "the medical record . . . does not show a diagnosis of [CFS]." (Tr. 20.) In this regard, Plaintiff relies on Dr. Maloney's 2004 report. (Docket Entry 11 at 14 (citing Tr. 557).) Defendant, in turn, seemingly concedes that Dr. Maloney's assessment of "chronic fatigue" equates to a diagnosis of CFS, but argues that Plaintiff's treatment records do not demonstrate the criteria required to substantiate the diagnosis of CFS. (Docket Entry 14 at 5-7 & n.1.) As to that latter point, the Social Security Administration draws a distinction between a treatment provider's diagnosis of CFS (which the parties here agree has occurred) and the existence of a medically determinable impairment (which they dispute):

> Under the [Centers for Disease Control] definition, the diagnosis of CFS can be made based on an individual's reported symptoms alone once other possible causes for the symptoms have been ruled out. However, [Sections 223(d)(3) and 1614(a)(3)(D) of the Act and 20 C.F.R. § 404.1508] require that, for evaluation of claims of disability under the Act, there must also be medical signs or laboratory findings before the existence of a medically determinable impairment may be established.

Social Security Administration, Evaluating Chronic Fatigue Syndrome (CFS) ("SSR 99-2p), 1999 WL 271569, at *2.

Nonetheless, Plaintiff's laboratory findings sufficiently satisfy the criteria needed to establish that his CFS constituted a medically determinable impairment. "An elevated antibody titer

16

to Epstein-Barr virus (EBV) capsid antigen equal to or greater than
1:5120, or early antigen equal to or greater than 1:640"
demonstrates "the existence of a medically determinable impairment
in individuals with CFS." SSR 99-2p, 1999 WL 271569, at *3. Here,
Dr. Maloney documented that Plaintiff had "significantly elevated
viral antibody titers to . . . [the] Epstein-Barr virus." (Tr. 556
(emphasis added).) Although the record does not contain the actual
laboratory report reflecting this result or the actual levels of
antibody detected, the Court should find that Dr. Maloney's
notation satisfies SSR 99-2p's requirement.

The question remains, however, whether Plaintiff's CFS
constituted a "severe" impairment under the regulations. An
impairment qualifies as "not severe" if it constitutes only "a
slight abnormality . . . that has no more than a minimal effect on
the ability to do basic work activities." Social Security
Administration, Policy Interpretation Ruling Titles II and XVI:
Considering Allegations of Pain and Other Symptoms in Determining
Whether a Medically Determinable Impairment is Severe ("SSR 96-
3p"), 1996 WL 374181, at *1. Applicable regulations further
provide that "basic work activities" include:

> (1) Physical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying,
> or handling;

> (2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Plaintiff bears the burden of showing severity at step two. See Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant."). Unless obviously slight, insignificant, or meaningless, limitation in one of the above-cited areas due to an impairment generally leads to recognition of that impairment as severe. See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984). Plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors
> alone. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th
> Cir. 2003). A claimant must provide medical evidence
> that he or she had an impairment and how severe it was
> during the time the claimant alleges they were disabled.
> 20 C.F.R. § 404.1512(c). The evidence that a claimant
> has an impairment must come from acceptable medical
> sources including licensed physicians or psychologists.
> 20 C.F.R. § 404.1513(a). A claimant's statements
> regarding the severity of an impairment is [sic] not
> sufficient. <u>Adame v. Apfel</u>, 2000 WL 422341 at *3-4 (D.
> Kan. March 20, 2000); <u>Flint v. Sullivan</u>, 743 F. Supp.
> 777, 782 (D. Kan. 1990).

<u>Rivas v. Barnhart</u>, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan.

Aug. 16, 2006) (unpublished).

In this case, although the record reflects Plaintiff's

numerous <u>self-reported</u> CFS-related symptoms, such as fatigue (<u>see,

e.g.,</u> Tr. 265, 289, 595, 620, 774, 789, 792, 795, 798, 800, 804,

807, 810, 813, 817, 820, 826, 829, 832, 835, 838, 841, 844, 847)

and memory problems (Tr. 264, 277, 552, 938, 983), "[t]he

determination at step two is based on <u>medical factors</u> alone."

<u>Rivas</u>, 2006 WL 4046153, at *4 (emphasis added). The <u>medical

evidence</u> falls short of a level that would have required the ALJ to

find Plaintiff's CFS severe. No treating physician assessments

exist identifying any limitations linked to Plaintiff's CFS

symptoms.[9] To the contrary, Plaintiff's medical providers

regularly assessed Plaintiff as "alert" (<u>see, e.g.,</u> Tr. 263-83,

---

[9] Moreover, on June 7, 2005, Plaintiff refused to attend a mental
examination that could have documented memory and other mental problems on the
grounds that it represented "a waste of time and money." (Tr. 134.)

19

285, 287, 289, 324) and noted normal strength in all muscle groups (see, e.g., Tr. 263-66, 493, 556, 592). Further, in a letter dated December 8, 2008, Rich Lowder, PA-C, who adjudged Plaintiff "disabled for full-time employment," did not even mention CFS as a disabling condition, much less assign any resultant restrictions. (Tr. 993.) Substantial evidence thus supports the ALJ's omission of CFS from the list of Plaintiff's severe impairments.

Even if the ALJ should have listed CFS as a severe impairment, that error does not warrant relief here. Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). The ALJ here found four severe impairments at step two and proceeded with the SEP. (Tr. 19-24.) Although Plaintiff claims the ALJ failed to address CFS in the RFC (Docket Entry 11 at 17), Plaintiff has not identified any limitations the ALJ should have included for CFS

20

(id. at 13-17).   Moreover, the ALJ's RFC adequately dealt with
Plaintiff's CFS (whether classified as severe or not) by
restricting him to light work with standing or walking limited to
an hour at a time.   (Tr. 21.)   Under such circumstances, any
alleged improper application of law at step two caused Plaintiff no
prejudice (and thus requires no relief).   See Oldham, 509 F.3d at
1256-57; Lewis, 498 F.3d at 911; Maziarz, 837 F.2d at 244; Lauver,
2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 579-80;
Jones, 2009 WL 455414, at *2.

## 5.  Medical Evidence Evaluation

Plaintiff contends the ALJ "minimized the severity of
[Plaintiff's] neck and back problems by ignoring most of the
medical evidence related to this issue and citing other evidence
out of context in support of [the] ultimate conclusion that
[Plaintiff] could perform light work with limitations."   (Docket
Entry 11 at 17.)   Specifically, Plaintiff claims "the ALJ cited a
single x-ray . . . showing grade I spondylolisthesis and mild
lumbar spondylosis, intimating that [P]laintiff's condition did not
cause significant limitations . . . [and] failed to cite or discuss
numerous x-rays and MRI reports of [P]laintiff's cervical and
lumbar spine which show the real nature and severity of his
conditions."   (Id. (citing Tr. 22).)   According to Plaintiff, the
ALJ also misstated that Plaintiff "refused" neck surgery.   (Id. at
18 (citing Tr. 22).)   Finally, he accuses the ALJ of taking out of

context a treating physician's report "that [P]laintiff's pain level was controlled to the point where [he] could 'cope.'" (Id. at 18-19 (citing Tr. 23).) These arguments lack merit.

At the outset, although the ALJ did not expressly discuss the x-rays and MRIs referenced by Plaintiff (see id. at 17-18; see also Tr. 19-25), that fact does not mean the ALJ ignored such evidence. An ALJ need not discuss every item in the record. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Notably, Plaintiff does not explain how the x-rays and MRIs in question support additional RFC limitations. (See Docket Entry 11 at 17-18.) Moreover, the ALJ found at step two that Plaintiff suffered from severe degenerative disc disease, cervical spondylosis, and spinal stenosis, indicating that the ALJ considered the evidence at issue. (Compare Tr. 19, with Tr. 322, 386, 500, 518.)[10] In short, Plaintiff has not shown any basis for relief on this point. See Fisher, 869 F.2d at 1057 (declining to remand "unless there is reason to believe that the remand might lead to a different result").[11]

---

[10] At step three, the ALJ analyzed Plaintiff's spinal impairments under Listing 1.04, Disorders of the Spine, see 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04, but found that none of them met or equaled the listing. (Tr. 20.) Plaintiff did not challenge that conclusion. (See Docket Entry 11.)

[11] A footnote in Plaintiff's brief complains that the RFC did not account for his "frequently reported disabling headaches, as many as five per month in 2003," but without identifying any restrictions the ALJ should have included. (Docket Entry 11 at 19 n.4.) The Court should decline to remand on that basis.

Plaintiff's argument that the ALJ mischaracterized certain evidence also fails.  Plaintiff alleges that the ALJ erred by finding that Plaintiff "refused" neck surgery when the evidence shows only that Plaintiff would "consider [the surgery] further." (Docket Entry 11 at 18 (citing Tr. 22, 331).)  However, Plaintiff's orthopedist recommended cervical surgery (see Tr. 268, 281, 329, 330) and Plaintiff chose not to proceed with the surgery (see Tr. 331, 1012-13).  Thus, the ALJ did not err by characterizing Plaintiff's decision as a "refusal."

Plaintiff also faults the ALJ for "suggest[ing] that because Plaintiff's pain could be reduced to the point of 'coping,' his pain d[id] not prevent the performance of full-time work." (Docket Entry 11 at 19 (citing Tr. 23).)  The ALJ did not err in relying upon Dr. Larry Pearce's finding that Plaintiff could "cope" with his level of pain.  First, the ALJ accurately recited Dr. Pearce's account.  In fact, Dr. Pearce's notes repeatedly reflect that Plaintiff remained able to "cope" with his pain level.  (See, e.g., Tr. 263-67, 270-83, 287, 289.)  Moreover, these findings generally appear to rely on Plaintiff's responses to pain survey questions. (See, e.g., Tr. 835, 838, 841, 844, 847, 850, 853, 856.)  Second, the ALJ cited Dr. Pearce's "coping" statement in context with many other findings which the ALJ listed as relevant to assessing Plaintiff's pain level.  For example, the ALJ noted that, despite Plaintiff's complaints of disabling headaches and fatigue, Dr.

Pearce noted that Plaintiff's activity level remained unchanged. (Tr. 23 (citing Tr. 878.)  The ALJ further observed that an internist found that Plaintiff had good range of motion in his neck, that another doctor deemed Plaintiff's range of motion and strength level normal in all muscle groups, that a TENS unit provided some relief, and that Plaintiff reported no adverse reactions to his medications.  (Id. (citing Tr. 672, 873, 952, 953))  The ALJ's accurate and fair review of record evidence, including Dr. Pearce's repeated observation that Plaintiff could cope with his pain levels, does not constitute error.

Moreover, substantial evidence supports the ALJ's RFC determination.  The ALJ found that Plaintiff retained the ability to perform light work, provided that he could stretch and move as needed while standing, that he did not have to stand or walk more than one hour at a time, and that he only needed to climb, stoop, kneel, crouch, and crawl occasionally.  (Tr. 21.)  None of Plaintiff's treating physicians have proffered any functional assessments of Plaintiff, much less one that conflicted with the ALJ's RFC determination.  Further, the ALJ crafted an RFC more restrictive than the RFC determinations of both state agency physicians.  (Compare Tr. 21, with Tr. 105-12, 137-44.) Additionally, as noted by the ALJ, despite reports of worsening pain and decreasing functional ability, Plaintiff continued to operate his lawn care business after the onset date and his

earnings remained "in line with what he ha[d] earned since 1973" with "2006 [being] one of [Plaintiff's] better years in terms of earnings." (Tr. 22.) The ALJ emphasized that this work entailed operating a riding mower via knobs and levers, digging post holes, using a weed-eater, grasping and unscrewing gasoline can lids, and performing maintenance on equipment, all of which demonstrated that Plaintiff retained greater functional ability than alleged. (Id.)

In sum, no reversible error occurred because a review of the decision and the record confirms not only that substantial evidence supported the RFC findings, but also that the ALJ connected such evidence and findings via "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

**CONCLUSION**

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing Judgment of the Commissioner or Remanding the Cause for Rehearing (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 12, 2014